# UNITED STATES DISTRICT COURT
for the
Southern District of California



FILED
SEP 1 9 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>One Silver Huawei Cellular Phone<br>Model: NXT-LQ9<br>FCC ID: QISNXT-LQ9 | Case No.<br><br>'19MJ10800 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 USC 1324, 1325 | Bringing in illegal aliens; unlawful entry by alien |

The application is based on these facts:

See attached Affidavit of USBP Agent Wenceslao Partida

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Agent Wenceslao Partida, USBP
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9/19/19

_____
*Judge's signature*

City and state: El Centro, CA

Hon. Ruth Bermudez Montenegro
*Printed name and title*

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The property to be searched is described as:

**One (1) Silver Huawei Cellular Phone**
Model: NXT-LQ9
FCC ID: QISNXT-LQ9

Currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Property Room, 211 West Aten Road, Imperial, California 92251.



## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of June 1, 2019 to August 8, 2019:

   a. tending to indicate efforts to smuggle undocumented aliens into the United States, or transport smuggled aliens within the United States;

   b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the efforts to smuggle undocumented aliens into the United States, or transport smuggled aliens within the United States;

   c. tending to identify co-conspirators, criminal associates, or others involved in smuggling undocumented aliens into the United States, or transporting smuggled aliens within the United States;

   d. tending to identify travel to or presence at locations involved in the smuggling or transportation of aliens, such as stash houses, load houses, or delivery points;

   e. tending to identify the user of, or persons with control over or access to, the subject telephone;

   f. tending to identify the user's alienage; and/or

   f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 8, United States Code Sections 1324 and 1325.**

# AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Wenceslao Partida, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of an illegal entry investigation conducted by United States Border Patrol Agents for the following electronic device:

> One Silver Huawei Cellular Phone
> Model: NXT-LQ9
> FCC ID: QISNXT-LQ9

("**Target Device**"), described in Attachment A (incorporated herein by reference);

seized by Border Patrol agents from Erik Misael BURRION-Najera ("BURRION") incident to his arrest for illegal entry in violation of Title 8, United States Code Section 1325(a)(1) on and about August 8, 2019.

2. The **Target Device** is currently in the possession of El Centro Border Patrol Sector located at 211 West Aten Road, Imperial, California 92251.

3. I seek authority to search the **Target Device** for evidence of crimes, specifically, violations of Title 8, United States Code, Sections 1325 and 1324, as described in Attachment B (incorporated herein by reference) for the time period from June 1, 2019, through August 8, 2019.

4. The information contained in this affidavit is based upon my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am an agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal agent with the USBP since June 6, 2008, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

6. I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. The El Centro Sector Prosecutions Unit is also tasked with investigating narcotics smuggling and bulk cash smuggling as it relates to the presentation of these cases in federal jurisdictions.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones and portable radios to maintain communications with co-conspirators in order to further their criminal activities. I am also aware that it is a common practice for alien smugglers to communicate with the smuggled aliens regarding smuggling arrangements and payment utilizing cellular telephones and portable radios. Conspiracies involving alien smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail and text messages referring to the arrangements of travel and payment, names, photographs, text messages, and phone numbers of co-conspirators and aliens to be smuggled.

8. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations,

and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

9. Based upon my training and experience as a USBP Agent, and consultations with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

   a. Aliens seeking to illegally enter the United States will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Cellular/mobile telephones used by undocumented persons contain evidence of alienage.

   c. Alien smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   d. Alien smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of the illegal aliens while they are in transit.

   e. Alien smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time the smuggled aliens will arrive at predetermined locations.

   f. Alien smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of the smuggled aliens.

   g. Alien smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of USBP checkpoints and border crossings.

   h. Alien smugglers and their co-conspirators often use cellular/mobile telephones to communicate with smuggled aliens prior to the smuggling event, and to arrange for payment after the smuggling event.

10. Based upon my training and experience as a USBP Agent, and consultations with law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/mobile telephones can and

3

often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I know based upon my training, education, and experience investigating these conspiracies that searches of cellular/mobile telephones yields evidence:

    a. tending to indicate efforts to smuggle undocumented aliens into the United States, or transport smuggled aliens within the United States;

    b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the efforts to smuggle undocumented aliens into the United States, or transport smuggled aliens within the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling undocumented aliens into the United States, or transporting smuggled aliens within the United States;

    d. tending to identify travel to or presence at locations involved in the smuggling or transportation of aliens, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the subject telephone;

    f. tending to identify the user's alienage; and/or

    g. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

11. The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews; my review of documents related to

4

this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other agents experienced in controlled substance investigations, and information gained through my training and experience. All the dates, times, and amounts listed in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## FACTS SUPPORTING PROBABLE CAUSE

12. On August 8, 2019, Border Patrol Agent J. Melendrez was conducting line watch duties in El Centro Station's area of responsibility when he received information that a group of individuals was seen traveling north from the United States/Mexico international boundary. At approximately 10:40 p.m., Agent Melendrez responded to the location where the group was seen and encountered three individuals walking north approximately 20 miles west of the Calexico, California West Port of Entry and approximately 1 mile north of the border. This area consists of some open desert, sandy washes, and a variety of trees and bushes. Illegal aliens frequently use this area to illegally enter into the United States due to its seclusion, as well as, its lack of vehicular and pedestrian traffic.

13. As Agent Melendrez identified himself, two of the individuals stopped, but the third individual, later identified as the Defendant Burrion-Najera, attempted to abscond by running through the desert and ignoring commands.

14. Agent Melendrez pursued the Defendant for about half a mile, and encountered him lying down in a wash trying to hide. The agent gave commands in English and Spanish to stay down and not to run, but Defendant got up and tried to escape for the second time by running off into the darkness. A few minutes later he was found hiding in a brush approximately one hundred yards south from the previous location. Agent identified himself and Defendant claimed he was from Mexico and admitted he was illegally in the United States.

15. During subsequent checks, it was determined that Defendant was in fact a citizen of Guatemala without proper immigration documents permitting him to be in the United States legally. The Target Device and a Guatemalan identification card were found within Burrion-Najera's property after his arrest.

16. Burrion-Najera is charged with unlawful entry by an alien in violation of Title 8, United States Code section 1325(a)(1) in the Southern District of California in case number 19-MJ-10292-KSC-AJB. A motion hearing is currently set for October 17, 2019.

17. On August 19, 2019, Burrion-Najera filed an appeal of the Magistrate Judge's release order, claiming that he is a 20-year-old individual from Guatemala who left Guatemala approximately a month to six weeks ago, and who has never been to the United States before.

18. At the time of his arrest, Burrion-Najera claimed ownership of the **Target Device**. He has since filed a motion requesting the return of the **Target Device**.

19. Based upon my experience and investigation in this case, I believe that Burrion-Najera may have used the **Target Device** to facilitate his illegal entry into the United States. The **Target Device** may have been used by Burrion-Najera to make arrangements with alien smugglers for his own smuggling into the United States, and further entry and travel within the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, messages sent via texting applications such as WhatsApp, email messages, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of cellular telephones which may identify the user's previous locations, as well as other persons involved in alien smuggling activities.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the unlawful entry by Burrion-Najera and alien smuggling activities, such as telephone numbers, made

6

and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, text messages, messages from texting applications like WhatsApp, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of the cellular telephone described herein. Because the **Target Device** has been in the custody of USBP since the date of Burrion-Najera's arrest, I believe that this information continues to be stored on the **Target Device**.

21. Alien smuggling conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the smuggling of undocumented aliens into the United States. Co-conspirators communicate with one another in efforts to ensure success in getting the smuggled aliens to their destination within the United States. In this case, evidence supports that probable cause exists to search the **Target Device** for information dating back to June 1, 2019, approximately two months prior to Burrion-Najera's arrest on August 8, 2019. This date is approximately two weeks before Burrion-Najera claimed he had left Guatemala.

## SEARCH METHODOLOGY

22. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards

inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

## CONCLUSION

25. Based on all of the facts and circumstances described above, there is probable cause to believe that Burrion-Najera used the **Target Device** to facilitate the offense of unlawful entry and bringing in aliens into the United States. The **Target Device** was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence and instrumentalities of violations of Title 8, United States Code, Sections 1324 and 1325.

26. There is also probable cause to believe that evidence and instrumentalities of illegal activity committed by Burrion-Najera continues to exist on the **Target Device**.

27. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachment B (incorporated

herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, an Agent with United States Border Patrol, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Wenceslao Partida
Border Patrol Agent

Subscribed and sworn to before me this ___19th___ day of September, 2019.

_____
The Honorable Ruth Bermudez Montenegro
United States Magistrate Judge

9

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The property to be searched is described as:

**One (1) Silver Huawei Cellular Phone**
Model: NXT-LQ9
FCC ID: QISNXT-LQ9

Currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Property Room, 211 West Aten Road, Imperial, California 92251.



## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, photographs, audio files, videos, and location data, for the period of June 1, 2019 to August 8, 2019:

a. tending to indicate efforts to smuggle undocumented aliens into the United States, or transport smuggled aliens within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the efforts to smuggle undocumented aliens into the United States, or transport smuggled aliens within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in smuggling undocumented aliens into the United States, or transporting smuggled aliens within the United States;

d. tending to identify travel to or presence at locations involved in the smuggling or transportation of aliens, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone;

f. tending to identify the user's alienage; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 8, United States Code Sections 1324 and 1325.**